```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
                         CHARLESTON
```

JOHN STEVEN LEROSE,
et al.,

      Plaintiffs,

v.                               Case No. 2:03-cv-02372

THE UNITED STATES OF
AMERICA, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

Currently pending before the court is the Motion of Defendant United States of America to Partially or Totally Quash the Deposition of Defendant William Coger Scheduled for January 12, 2006, filed January 6, 2006. (Docket Sheet Document # 108.) Plaintiffs responded on January 10, 2006. (# 111.) The court conducted a telephonic hearing on January 11, 2006, which was attended by counsel for Plaintiffs and the United States and Defendant William Coger. To the extent the United States requests a hearing on its Motion, that aspect of the United States' Motion is granted.

At a status conference before the court on January 4, 2006, the parties agreed to the deposition of Defendant William Coger on January 12, 2006. (# 107.) To that end, on January 6, 2006, Plaintiffs faxed to the United States and mailed to Defendant Coger, a notice to take the deposition of Defendant Coger and

requested that Defendant Coger produce certain documents. In particular, Plaintiffs requested that Defendant Coger produce (1) two letters dated May 22, 2000, which the United States contends are protected by the attorney-client privilege; (2) all documents received from or sent to any of the plaintiffs in this case or any lawyer for the government in this case; (3) Defendant Coger's Presentence Investigation Report; (4) all documents and correspondence from any inmate or friend or relative of any inmate sent to Defendant Coger while he was a corrections officer; and (5) all documents reflecting Defendant Coger's service in or discharge from the United States Navy. (# 108, Exhibit 1.)

The United States asserts that the discovery deadline in this matter has long since expired and although the court permitted limited discovery to go forward by its order entered November 30, 2005 (# 79), the documents requested in the notice of deposition exceed the boundaries of discovery permitted by the court. Regarding the Presentence Investigation Report, the United States asserts that Plaintiffs have not filed the requisite motion or obtained an order required by the United States District Court for the Northern District of West Virginia's Local Rule of Criminal Procedure 55.01. (# 108, pp. 2-3.)

In its request for relief, the United States seeks (1) a hearing on the issues raised in its Motion; (2) an order quashing the deposition of Defendant Coger inasmuch as Plaintiffs seek

production of documents beyond the discovery deadline established by the Court; (3) an order quashing Plaintiffs' request for the two letters protected by the attorney-client privilege; and (4) an order quashing Plaintiffs' request for production of Defendant Coger's Presentence Investigation Report. (# 108, pp. 3-4.)

In response, Plaintiffs asserts that they have not requested these documents from the United States and, as such, its objections are unfounded. If Defendant Coger objects, Plaintiffs assert that "the court should address timeliness issues then." (# 111, p. 2.) Plaintiffs assert that in any event, the requests are necessary because they relate to key issues that will be covered in the deposition. In addition, Plaintiffs assert that they had asked for all the documents requested in the deposition notice in discovery served some time ago, which Defendant Coger answered on October 20, 2004, and that the notice actually seeks supplemental answers to Plaintiffs' discovery. Plaintiffs assert Defendant Coger did not object to this discovery answered in October of 2004, and, as a result, has waived any privilege he might have. (# 111, p. 2.)

Regarding the Presentence Investigation Report, Plaintiffs assert that Local Rules 55.01 and 55.02 apply to disclosures by the Probation Office, not by Defendant Coger. Plaintiffs seek this information because "it may shed light on some of the materials in Coger's personnel file." (# 111, p. 3.)

As to the two letters, Plaintiffs asserts most of the cases

cited by the United States are not on point or can be distinguished (# 111, pp. 3-4), and, Plaintiffs "have a need for the two letters because they might probe the issue of what the government knew about Coger's alleged misconduct" in another case (# 111, pp. 3-4).

<u>Attorney-Client Privilege - Request Number 1</u>

By order entered January 4, 2006, the court directed that the United States turn over the two letters to Defendant Coger, as he indicated in a telephone status conference on the same date that he did not possess copies of these letters.  At the telephone status conference, the court also requested that the United States submit any argument as to why these documents are subject to the privilege.  By letter dated January 5, 2006, the United States submitted argument and case law as to why the letters are subject to the attorney-client privilege.  Thereafter, the court requested that the United States submit the letters to the court <u>in</u> <u>camera</u>, which the United States did by cover letter dated January 9, 2006. Plaintiffs filed a response on January 10, 2006. (# 111.)  At the hearing on this Motion, Defendant Coger also opposed production of the letters.

Without revealing their content, the two letters at issue are dated May 22, 2000, and were drafted by Defendant Coger and addressed to regional counsel for the Federal Bureau of Prisons ("BOP").  The letters relate to Defendant Coger's request for representation and his position regarding allegations in a

4

complaint filed against him and others in the United States District Court for the Northern District of Ohio, Eastern Division and styled <u>Wilson v. Bureau of Prisons, et al.</u>, Civil Action No. 4:00-cv-00295. By letter to the court dated January 5, 2006, the United States represents that these letters were written in Defendant Coger's capacity as an employee of the BOP and that the United States subsequently decided to represent Defendant Coger in his official and individual capacities in the <u>Wilson</u> lawsuit.

In <u>In re Allen</u>, 106 F.3d 582, 600 (4th Cir. 1997), our Court of Appeals stated that

> [a] party asserting the attorney-client privilege must demonstrate:
>
> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

The attorney-client privilege must be strictly construed. <u>In re Grand Jury Proceedings</u>, 727 F.2d 1352, 1355 (4th Cir. 1984). Consistent therewith, the burden of establishing the privilege rests with the proponent. <u>United States v. Jones</u>, 696 F.2d 1069, 1072 (4th Cir. 1982).

The central issue in the instant dispute is whether the United

5

States can assert the attorney-client privilege where an employee of the BOP (who is also a defendant in the instant matter and is now a former employee) communicated with counsel for the BOP about obtaining representation in another case wherein the employee had been sued in his official and individual capacities.

Courts have generally recognized that the "attorney-client privilege exists in a governmental context, i.e., in the relationship between the lawyers who work in an agency and the agency officials who call upon them for legal advice." Evans v. Atwood, 177 F.R.D. 1, 3 (D. D.C. 1997) (citing Tax Analysts v. Internal Revenue Service, 117 F.3d 607, 617 (D.C. Cir. 1997)); see also In re Allen, 106 F.3d at 600 n.8 (4th Cir. 1997) (holding that attorney-client privilege attaches to communications between members of the Attorney General of West Virginia's office and hired outside counsel and noting generally that governmental officials can rely on the attorney-client privilege); Ross v. City of Memphis, 423 F.3d 596, 601-02 (6th Cir. 2005) (holding that a government entity, including a municipal corporation, can assert attorney-client privilege in the civil context and noting that although proposed Rule 503 of the Federal Rules of Evidence was never adopted by Congress, it defined a client as a public or private organization or entity and comments to the proposed Rule state that the definition of client includes "governmental bodies"); Restatement (Third) of Law Governing Lawyers § 74 (2000)

6

(recognizing that the attorney-client privilege extends to "a communication of a governmental organization ... and of an individual employee or other agent of a governmental organization as a client with respect to his or her personal interest").

In light of the general applicability of the privilege in the governmental context, the court turns to the issue of whether the privilege applies to this specific set of facts. The facts of the instant matter are akin to an employee in the corporate setting who seeks the advice of corporate counsel. In Upjohn Co. v. United States, 449 U.S. 383, 390 (1981), the United States Supreme Court found objectionable, the district court's test of availability of the attorney-client privilege in the corporate setting as it restricted availability of the privilege to those corporate officers who played a "substantial role" in deciding and directing a corporation's legal response. The court in Upjohn extended the applicability of the privilege beyond those individuals who played a substantial role, observing that

> [i]n the case of the individual client the provider of information and the person who acts on the lawyer's advice are one and the same. In the corporate context, however, it will frequently be employees beyond the control group [i.e., individuals other than officers and agents responsible for directing the company's actions] ... who will possess the information needed by the corporation's lawyers.

Id. at 391. The Court in Upjohn concluded that because "[t]he communications [at issue] concerned matters within the scope of the employees' corporate duties, and the employees themselves were

7

sufficiently aware that they were being questioned in order that the corporation could obtain legal advice" the attorney-client privilege protected disclosure of certain communications. Id. at 394.

Upjohn is instructive, particularly when read together with the more analogous case of Galarza v. United States, 179 F.R.D. 291, 295-96 (S.D. Cal. 1998), which is cited by the United States in its January 5, 2006, letter. In Galarza, the plaintiff brought suit under the Federal Tort Claims Act against the United States alleging negligent medical diagnosis and treatment. Plaintiff did not name any of the physicians who treated her. Plaintiff opposed the United States' efforts and plans to conduct ex parte communications with these physicians and sought a protective order to either prevent such communications or make them fully accessible and not subject to the attorney-client privilege. The court declined to restrict the United States' access to the physicians. Relying on Upjohn, and noting its holding that "communications between the corporation's employees and corporate counsel were protected from compelled disclosure" based on application of the attorney-client privilege, Galarza, 179 F.R.D. at 295, the court reasoned that

> [t]his case is similar to that of a corporation whose employees are alleged wrongdoers or know of relevant facts of the alleged wrongdoing. The Government functions through its employees; it lives or dies by the acts of its employees. The [United States Attorney's Office] in its representation of the United States needs

8

> full and frank disclosure by the employee/physician in order to properly give sound legal advice to the United States. In this case, the alleged negligent physicians are employees of the United States who operated on Galarza and were her treating physicians. In addition, Galarza's treating physicians prior to and following the surgery are employees of the United States. The communications sought by the United States concern matters within the scope of the employee/physician duties during treatment of Galarza. The [United States Attorney's Office] must be fully informed of all that relates to the matter to represent the United States with any effectiveness. The United States Supreme Court has recognized that under public policy, and to promote the administration of justice, these types of communications between employees and corporate counsel are protected against compelled disclosure under the attorney-client privilege.

Id. (citing Upjohn, 449 U.S. at 389).

In the instant matter, the attorney-client privilege protects from production, the two letters authored by Defendant Coger to BOP regional counsel in the Wilson lawsuit. Case law cited above recognizes the ability of the United States to assert the privilege. Furthermore, Defendant Coger sought the legal advice of BOP counsel while he was employed as a corrections officer on matters related to and within the scope of his employment at the time. There is every indication that the letters were and remain confidential, and there is no indication of waiver by anyone.

The court finds Plaintiffs' attempts to distinguish Galarza unconvincing. Plaintiffs assert that "*Galarza* is distinguishable because there, the doctor was not a defendant (Coger was a defendant in the *Wilson* suit), and the communication in *Galarza* related to the instant suit, while in this case, the letters from

9

Coger relate to a case that was dismissed several years ago." (# 111, p. 3.)  In addition, Plaintiffs assert that they "have a need for the two letters because they might probe the issue of what the government knew about Coger's alleged misconduct with inmate Wilson." (# 111, p. 4.)

The fact that the letters relate to another case dismissed several years ago does not extinguish the applicability of the privilege.  The attorney-client privilege survives even death. See Swidler & Berlin v. United States, 524 U.S. 399, 405-07 (1998) (quashing grand jury subpoenas and finding attorney's handwritten notes about meeting with Vince Foster, Deputy White House Counsel who later committed suicide, protected by attorney-client privilege and not subject to production before a grand jury in connection with investigation by independent counsel).

Based on the above, the court finds that the United States' Motion should be granted as to the two letters for which the United States asserts the attorney-client privilege.

Other Documents - Request Numbers 2, 4

At the hearing on this Motion, Defendant Coger stated that he does not possess any documents or correspondence received from or sent to Plaintiffs or any documents received from any inmate or friend or relative of any inmate sent to Defendant Coger while he was incarcerated.  Counsel for the United States stated that he sent cover letters enclosing pleadings and a letter instructing

10

Defendant Coger that he could request counsel. Counsel for the United States represented that he believed that the latter letter had been produced, while the other letters were nonsubstantive.

In light of the fact that Defendant Coger does not possess any of the documents requested in request numbers 2 and 4, the court finds that the United States' Motion should be granted.

Presence Investigation Report - Request Number 3

The Northern District of West Virginia's Local Rule of Criminal Procedure 55.01 requires that confidential records such as presentence records "shall not be disclosed unless a written application is made to the Court particularizing the need for specific information. No disclosure shall be made until an order is entered." Local Rules of the United States District Court for the Northern District of West Virginia, Local Rule of Criminal Procedure 55.01. Pursuant to Local Criminal Rule 55.02, "[a]ny disclosure of the presentence report to ... any party other than the Court shall not include any recommendation as to sentence." Local Rules of the United States District Court for the Northern District of West Virginia, Local Rule of Criminal Procedure 55.02.

At the hearing on this Motion, the court advised the parties that Defendant Coger could disclose this document if he wished. Defendant Coger declined. As a result, the court instructed that if Plaintiffs sought this document, they must follow the Northern District's Local Rule of Criminal Procedure 55.01 and obtain a

court order from the presiding District Court Judge authorizing its release.  Thus, the United States' Motion should be granted as to the Presentence Investigation Report if and until Plaintiffs obtain a court order pursuant to Rule 55.01.

Navy Service - Request Number 5

At the hearing on this Motion, the United States and Defendant Coger represented that the only discharge document in existence has been produced.  Thus, the United States' Motion should be granted as to request number 5.

Accordingly, it is hereby **ORDERED** that the Motion of Defendant United States of America to Partially or Totally Quash the Deposition of Defendant William Coger Scheduled for January 12, 2006 is **GRANTED** as set forth above.  The deposition will go forward without production of the requested documents.

The Clerk is directed to fax and mail a copy of this Memorandum Opinion and Order to counsel of record and mail a copy to Defendant Coger.

ENTER: January 11, 2006

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge